UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

TAJ WILLIAMS,

        Defendant.
_____

REPORT & RECOMMENDATION

16-CR-6014W

## PRELIMINARY STATEMENT

By Order of Hon. Elizabeth A. Wolford, United States District Judge, dated February 11, 2016, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 18).

Defendant Taj Williams ("Williams") filed motions seeking various forms of relief. (Docket # 24). On October 26, 2016, this Court issued a report and recommendation to the district court recommending that the district court deny Williams's motion to suppress statements. (Docket # 37). Familiarity with that decision is assumed.

With respect to Williams's motion to suppress tangible evidence, this Court concluded that, even excising observations made during the course of an initial search of the vehicle, the remaining allegations in the affidavit in support of the warrant, taken together, provided adequate probable cause to support the warrant for the search of the vehicle. (*Id.* at 22). Thus, the Court determined that the first requirement of the independent source doctrine had been met. (*Id.*). The Court scheduled a further evidentiary hearing to address the second

element – whether the investigating officers would have applied for a warrant in the absence of the pre-warrant search of the vehicle. (*Id.*). That hearing was conducted on December 5, 2016. (Docket ## 44, 46). For the reasons discussed below, I recommend that the district court deny Williams's pending motion to suppress.

## FACTUAL BACKGROUND

During the evidentiary hearing on December 5, 2016, the government called Investigator Andrew MacKenzie ("MacKenzie") to testify. MacKenzie testified that he has been employed by the City of Rochester Police Department for approximately sixteen years and had been temporarily assigned to the Arson Task Force ("ATF") during the relevant time period. (Tr. 4-5).[1] On January 18, 2015, MacKenzie was notified by Investigator Dorrer ("Dorrer") that a fire had occurred at the Chili Express Convenient store located at 989 Chili Avenue. (Tr. 5-6). MacKenzie reported to the Public Safety building where Dorrer informed him that somebody had used a tire iron or pole to break the door of the building and threw a Molotov cocktail into the store to start the fire. (Tr. 6).

MacKenzie reviewed surveillance footage from the security cameras at the store. (Tr. 6-7, 16). According to MacKenzie, the footage depicted a white Chevy Trailblazer with a dark hood, sunroof, luggage rack and a missing gas door drive by the premises twice, just prior to the arson. (Tr. 6-7). Dorrer informed MacKenzie that in 2012 there had been an arson at the same location under similar circumstances. (Tr. 8). Dorrer indicated that the 2012 arson continued to be an open investigation and that no arrests had been made. (*Id.*). In September 2014, after the 2012 fire had been the subject of a television show called "Crime Stoppers," an anonymous caller informed the ATF Bureau that individuals named Taj Williams and "ChaChi"

---

[1] The transcript of the evidentiary hearing shall be referred to as "Tr." (Docket # 46).

were responsible for the 2012 fire. (Tr. 8). According to the tipster, the individuals had driven a gray Toyota 4Runner registered to Taj Williams's girlfriend Vanessa Blandino to perpetrate the 2012 arson. (Tr. 8-9).

This tip was investigated, and it was determined that Vanessa Blandino currently had a white Chevy Trailblazer registered in her name. (Tr. 9). Using the plate number associated with that vehicle, MacKenzie identified a Rochester Police Department ("RPD") Field Information Report from March 2014 that identified Taj Williams as a passenger in the white Chevy Trailblazer. (Tr. 9). According to the report, the vehicle had front end damage and was missing the "gas cap." (Tr. 9). The report also listed an address of 140 Hazelwood Terrace. (Tr. 10).

On January 18, 2015, MacKenzie and Dorrer traveled to that location and observed a white Chevy Trailblazer with a missing gas door parked in the driveway. (Tr. 10). The officers did not exit their vehicle and had no intention of requesting a warrant to search the vehicle at that time. (Tr. 10-11, 19-20, 28). Later that same day, after finishing work for the day, MacKenzie traveled back to 140 Hazelwood Terrace. (Tr. 11). At that time, he observed the white Trailblazer traveling westbound on Hazelwood Terrace and followed the vehicle. (Tr. 11, 23). MacKenzie was traveling in an unmarked police vehicle and was not wearing a uniform. (Tr. 17-18). MacKenzie did not see and could not identify the driver of the vehicle. (Tr. 11, 23-25).

MacKenzie observed the vehicle fail to signal within one hundred feet of a turn – which he testified was a violation of Section 1163(d) of the New York Vehicle and Traffic Law – and requested a uniformed officer to perform a traffic stop of the vehicle. (Tr. 17). RPD officers Wegman and Cushman responded and conducted a traffic stop of the vehicle.

3

(Tr. 11-12, 18). Williams was identified as the driver of the vehicle, and a DMV check indicated that his license had been revoked. (Tr. 12). Williams was arrested for a felony offense of driving without a license and transported to the Public Safety Building. (Tr. 25).

During the traffic stop, MacKenzie was able to observe that some of the characteristics of the vehicle appeared similar those of the vehicle depicted in the surveillance footage, including a dark hood, sunroof, luggage rack, and a missing gas door. (Tr. 12-13). After learning that Williams was driving the vehicle and confirming that the vehicle appeared to be the same one depicted in the security footage, MacKenzie decided to apply for a search warrant for the vehicle. (Tr. 13, 26-28).

MacKenzie testified that under normal circumstances, the vehicle would have been towed to an impound lot, but because he intended to apply for a search warrant, he instructed the officers to arrange for it to be towed to the Public Safety Building. (Tr. 13, 26-27). According to MacKenzie, the officers were required to impound the vehicle after arresting the driver for aggravated unlicensed operation of the vehicle regardless of the fact that a passenger had been in the car who may have been a licensed driver. (Tr. 26).

Prior to having the vehicle towed, MacKenzie inspected the interior of the vehicle to identify any valuable or dangerous items. (Tr. 14). He opened the back hatch of the vehicle and observed various items of personal property and a red gas can. (Tr. 14). MacKenzie testified that although he believed his observation of the gas can was pertinent information to include in his application for the warrant, he had decided to apply for a search warrant prior to observing the gas can. (Tr. 15, 28-29).

## **DISCUSSION**

As explained in my previous decision, "[t]he exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." *Murray v. United States*, 487 U.S. 533, 536-37 (1988) (internal citations omitted); *see Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.), *cert. denied*, 513 U.S. 877 (1994). This doctrine applies not only to direct evidence, but also to tangible and testimonial evidence derived from the tainted evidence "up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *Murray v. United States*, 487 U.S. at 537 (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)).

Under the independent source doctrine, evidence originally discovered by illegal means but later seized pursuant to lawful means will not be suppressed. *Murray*, 487 U.S. at 542; *see also United States v. Johnson*, 994 F.2d 980, 987 (2d Cir.) ("[c]ourts have applied the independent source exception in cases where the police stumble upon evidence while engaging in an unlawful search or entry, but where there was an independent basis apart from the illegal entry to allow a warrant to issue"), *cert. denied*, 510 U.S. 959 (1993); *United States v. O'Brien*, 498 F. Supp. 2d 520, 540 (N.D.N.Y. 2007) ("[i]f police seize evidence pursuant to a valid search warrant obtained on the basis of information unconnected to an earlier Fourth Amendment violation, there is an independent source for the seizure, and the evidence is untainted and admissible"), *aff'd*, 303 F. App'x 948 (2d Cir. 2008). The independent source exception requires proof that: "(1) the warrant . . . [is] supported by probable cause derived from sources independent of the illegal entry; and (2) the decision to seek the warrant [was] not . . . prompted

by information gleaned from the illegal conduct." *United States v. Bonczek*, 391 F. App'x 21, 24 (2d Cir. 2010) (citing *United States v. Johnson*, 994 F.2d at 987).

At this stage, the only remaining issue is whether the government has established that MacKenzie's decision to seek the vehicle warrant was not prompted by his observation of the gas can in the vehicle during the pre-warrant search. Williams maintains that MacKenzie's testimony is not credible because the record demonstrates that MacKenzie participated in a ruse to perform a traffic stop of Williams, conducted a pretextual arrest and an illegal search of the vehicle, and then questioned Williams regarding the arson. (*Id.* at 4-5). I disagree.

MacKenzie testified that when he first observed the white Chevy Trailblazer in the driveway of 140 Hazelwood Terrace, he was not prepared to seek a search warrant for the vehicle. Rather, he testified credibly, he decided to apply for the warrant after learning that Williams was driving the vehicle and observing that the vehicle appeared to be the same one observed on the surveillance footage from the scene of the arson. Although Williams maintains that the traffic stop was a ruse designed to facilitate an illegal search the vehicle, he does not challenge the lawfulness of the traffic stop, and MacKenzie testified that the stop was based upon his observations of a traffic violation.

Further, although Williams questions MacKenzie's motivations for the traffic stop and his subsequent interrogation of Williams, his alleged improper motivations would not in any event warrant suppression of the evidence subsequently obtained pursuant to the warrant. *See Johnson*, 994 F.2d at 987 ("[w]hether the agents made their mistake in good faith is not relevant to th[e] inquiry[;] [w]hat is key is the fact that their error did not result in the government obtaining evidence it would not otherwise have obtained"). Williams maintains that it would be a "suspension of disbelief" to credit MacKenzie's testimony that the observation of a gas can in

6

the trunk of the vehicle did not play a role in his decision to seek a warrant.  (Docket # 48 at 4-5). Although he testified that his observation of the gas can was relevant, I credit MacKenzie's testimony that he had already determined to seek a search warrant before he observed the can. *See United States v. Munteanu*, 2013 WL 2898165, *5 (E.D.N.Y. 2013) ("[d]efendant's assertion that the government would not have sought a search warrant in these circumstances without first verifying that the cocaine was in the hotel room is without merit").

        Considering the information learned during the ongoing investigation of the arson, including the images from the surveillance footage, the unique characteristics of the vehicle, and the identification of Williams as the driver, coupled with the tip linking Williams to the prior arson at the same location, I find that MacKenzie would have obtained a warrant for the vehicle even if he had not conducted the pre-warrant search.  Under such circumstances, I conclude that the application for the warrant was not prompted by the pre-warrant search, and the independent source exception applies. *Johnson,* 994 F.2d at 987 ("[c]learly, the agents would have and could have applied for and been issued a warrant" where there was probable cause to issue a warrant and where "the only reason the agents failed to apply for a warrant prior to [engaging in unlawful search] ... was their mistaken belief that they were entitled to do so"); *United States v. Nayyar*, 2016 WL 6836350, *13 (S.D.N.Y. 2016) ("[t]he initial search was not a 'confirmatory search'[;] [w]hat prompted the application for the search warrant was the longstanding investigation of, and pending charges against, [defendant]"); *United States v. Munteanu*, 2013 WL 2898165 at *5 ("the warrantless search, even if it was illegal, did not result in the government obtaining evidence it would not otherwise have obtained, and the independent source exception applies") (internal quotations omitted).  Accordingly, I recommend that the district court deny Williams's motion to suppress physical evidence.

## **CONCLUSION**

For the reasons stated above, I recommend that the district court deny Williams's motion to suppress physical evidence. (Docket ## 24, 48).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
April 6, 2017

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                               *s/Marian W. Payson*
                                 MARIAN W. PAYSON
                                 United States Magistrate Judge

Dated: Rochester, New York
       April 6, 2017

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).